# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON VAUGHN, | ) | |
| | ) | Civil Action No. 17 – 546 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CO GILL, *et al.*, | ) | ECF Nos. 63, 72 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff, Aaron Vaugh, an inmate of the Pennsylvania Department of Corrections ("DOC") initiated the above-captioned prisoner civil rights action on April 27, 2017, and his Complaint was docketed on May 22, 2017. (ECF Nos. 1, 5.) Plaintiff eventually filed an Amended Complaint on April 9, 2018, which is the subject of the pending Motions to Dismiss. (ECF No. 50.) In his Amended Complaint, Plaintiff names as Defendants thirty-three (33) officers and staff employed at SCI-Greene, where the events giving rise to this action occurred, as well as 8 groups of John/Jane Doe Defendants that include officers and medical staff at SCI-Greene, and the institution SCI-Greene in its own right. While his Amended Complaint fails to specify which claims he is raising against which Defendants, he does claim that Defendants violated his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The Defendants that Plaintiff did identify in his Amended Complaint were served and filed a Partial Motion to Dismiss for Failure to State a Claim on August 15, 2018, except for Defendant Dorina Varner who filed a separate Motion to Dismiss for Failure to State a Claim on November 9, 2018. (ECF Nos. 63, 72.) Plaintiff filed responses in opposition

1

to those Motions on September 11, 2018 and December 12, 2018, respectively. (ECF Nos. 67, 80.) The Motions are now ripe for review.

### A. <u>Allegations</u>

Plaintiff alleges that around 7:30pm to 8:30pm on November 10, 2016, while he was on H-B Pod, CO Gill and his co-worker came to his cell to escort him to F-B Pod. Plaintiff claims that he had been having problems with CO Gill, who would call Plaintiff a "protective custody pussy," and when CO Gill came to escort him to F-B Pod that night, he told Plaintiff "do what you said you were going to do to me." Plaintiff claims he ignored CO Gill and followed all orders, but during the escort CO Gill started to yank on his arm and say "do something." Once they got into the hallway, CO Gill slammed Plaintiff to the floor face first and then punched him multiple times while his co-worker held his head to the floor. CO Gill kept telling Plaintiff to "stop resisting," but Plaintiff claims that he was never resisting in the first place. Plaintiff was then taken to see the nursing staff on that shift and they put tape over his left eye, which he claims didn't stop bleeding until days later. The guards then put a bag (spit mask) over his face and brought him to a cell on F-B Pod. He claims that CO Perez-Ramos removed from the cell the mattress, pillow, sheets, blanket and toilet paper and that none of his "basic cell content" was given to him for a month. He also claims that he was in the cell for thirteen (13) days without running water, socks, boxers, shoes or t-shirts. He claims that the only time inmates are put in cells without these kinds of basic necessities is when they are on suicide watch, which he was not. He states that he filed a grievance (#653771) about the conditions of his confinement, but it was denied at all levels.

After the incident, which Plaintiff describes as an assault, he was given an "illegitimate disciplinary hearing" by the Hearing Examiner, D. Benner-Hex. Specifically, he states that on

November 15, 2016, at 9:00am, CO Hornsacker and CO Saunders told Plaintiff that he had a misconduct hearing to go to, but Plaintiff claims that he was never served with a misconduct. When asked why he was at the hearing, D. Benner-Hex told Plaintiff to be quiet and listen or that he would get another misconduct. He claims that he was interrogated, harassed and intimidated by D. Benner-Hex, CO Hornsacker and CO Saunders to drop his grievance (#652525) that he had filed about the incident with CO Gill and to not file a lawsuit. He ended up pleading not guilty to the misconduct charges but filed a grievance (#653776) against D. Benner-Hex for giving him a disciplinary hearing without having received a misconduct. He also says that he sent the hearing examiner's report to Robert D. Gilmore, but nothing was done about it.

After the incident with CO Gill, Plaintiff attempted to report the abuse to Ms. Sokol but claims that she lied by telling him that she had reported the incident to security when in actuality she had not. He filed a grievance (#653770) against Ms. Sokol but it too was denied on all levels.

Plaintiff also claims that he was denied his right to use the abuse hotline to report the abuse and he wrote numerous request slips to CO Carter and CO Steckly that were ignored. He filed a grievance (#653768) about being denied the use of the abuse hotline but it was denied on all levels.

Plaintiff states that he was "illegally transferred" to SCI-Retreat on March 15, 2017 without ever seeing the Program Review Committee or having prior knowledge about the transfer until CO Carter told him to pack up his property on March 13, 2017. He claims that he was transferred in retaliation for the incident with CO Gill on November 10, 2016.

In a somewhat hodgepodge of allegations, Plaintiff states that from the time of the incident with CO Gill on November 10, 2016, he was not given basic cell content or hygiene

3

products like toilet paper, new sheets on laundry day, new DOC jumpsuits, his property box, in-house paper work and approved purchased items for which he claims he was never reimbursed. He also states that he was consistently denied meals by CO Carter, CO Steckly, CO Imohoff, Sgt. Ticky and CO Tuscano, and he was forced to eat from a Behavioral Modified Bag that he did not deserve. He states that he filed numerous grievances and requests slips notifying people about his mistreatment, and claims that this included Mr. Stella, Mr. Longstrech, Ms. Sokol, and the Program Review Committee, as well as non-defendants such as Ms. Murphy, Mr. Dicenzo, Dr. Kelly, Ms. Wendell, Andy Filkosky and Dr. Ply. He states that all of his grievances were denied and he was harassed every day until he was transferred.

B. **Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. Apr. 3, 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

### C. Discussion

Plaintiff does not specify what conduct by what Defendant violated what right, but he does set forth a list of allegations that he refers to as "claims," which this Court will categorize and apply the applicable law based on a liberal construction of Plaintiff's Amended Complaint.

#### 1. Excessive Force

Plaintiff alleges that on November 10, 2016, CO Gill and another officer subjected him to excessive force while escorting him from one housing unit to another. He claims that CO Gill slammed him to the floor after he verbally antagonized Plaintiff to "do something," and he claims that CO Gill's co-worker held his head down on the floor while CO Gill punched him multiple times in the face.

The relevant inquiry in evaluating a claim of excessive force by prison guards is whether the force used was applied in good faith to maintain or restore discipline, or instead "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation and internal quotation marks omitted); Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The latter use of force is prohibited. Hudson, 503 U.S. at 6-7.

Defendants agree that Plaintiff has stated a claim for excessive force under the Eighth Amendment and that the case should proceed to summary judgment on this issue.

### 2. Conditions of Confinement

Next, Plaintiff alleges that he was denied meals and access to basic hygiene products and cell contents, and he also claims that, without just cause, he was forced to eat from a Behavioral Modified Bag and placed on property restriction. The Court liberally construes these allegations to assert a conditions of confinement claim under the Eighth Amendment.

In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of "'the minimal civilized measure of life's necessities.'" Id. at 298-99, 301-05 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To succeed on an Eighth Amendment conditions of confinement claim, the inmate must demonstrate both an objective element – that the deprivation was sufficiently serious--and a subjective element – that the prison officials acted with a sufficiently culpable mind. Wilson, 501 U.S. at 298. Prison conditions may objectively violate the Eighth Amendment proscription against cruel and unusual punishment when inmates are deprived of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The Constitution does not mandate comfortable prisons. Rhodes, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." Id. Additionally, Pennsylvania federal and state courts are unanimous in holding that conditions in restrictive housing in Pennsylvania prisons do not, in and of themselves, violate the Eighth Amendment. See Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, at *3 (W.D. Pa Mar. 13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W.D. Pa. 2008) (holding that the conditions of disciplinary confinement did not implicate the Eighth Amendment), *rev'd on other grounds*, 352 F. App'x 701 (3d Cir. 2009); Dantzler v. Beard, 2007 WL 5018184, at *11-12 (W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, 2007 WL 2852525, at *14 (W.D. Pa. Sept. 27, 2007) (holding that the conditions of confinement in the LTSU did not satisfy the objective component of an Eighth Amendment claim); Banks v. Beard, 2006 WL 2192015, at *11 (W.D. Pa. Aug. 1, 2006) (same); Rivera v. Pennsylvania Dept. of Corrections, 837 A.2d 525, 530-32 (Pa. Super. 2003) (same).

### a. **Denial of meals**

Plaintiff alleges that he was denied many meals in the months following the incident with CO Gill and that he was given a Behavioral Modified Bag which had little to no food. The officers identified with this claim are CO Carter, CO Stckley, CO Imohoff, CO Tuscano and Sgt. Tikey. However, nowhere in his Amended Complaint does Plaintiff specify what meals he was

7

denied and when or how often he was required to have bag meals. Nor does he contend that he ever went hungry or suffered any ill effects to his heath. Only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim. *See* <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983). *See also* <u>Foster v. Runnels</u>, 554 F.2d 807, 812-13 (9th Cir. 2009) (holding denial of 16 meals over 23-day period was sufficient serious deprivation for purposes of the Eighth Amendment but denial of meals on two isolated occurrences did not rise to the level of a constitutional violation); <u>Ford v. Brd. of Mgrs of New Jersey State Prison</u>, 407 F.2d 937, 939-40 (3d Cir. 1969) (no Eighth Amendment claim where prisoner fed four slices of bread and one pint of water three times a day with a full meal every three days); <u>Adams v. Kincheloe</u>, 743 F.Supp. 1385, 1391 (E.D. Wash. 1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment especially since inmate did not suffer from any weight loss or medical conditions); <u>Briggs v. Heidlebaugh</u>, 1997 WL 318081, at *3 (E.D. Pa. May 22, 1997) (feeding inmate nothing but bread and cheese for seventy-two hours did not support an Eighth Amendment violation); <u>Rivera v. Pennsylvania Dept. of Corrections</u>, 837 A.2d 525, 530-32 (Pa. Super. 2003) (method of using food loaf as behavior modification does not violate the Eighth Amendment).

Plaintiff's allegations are difficult to follow and do not contain sufficient facts or the amount of specificity required to proceed. However, the Court is not certain that Plaintiff would be unable to state an Eighth Amendment claim if he were given the opportunity to amend his complaint once more. Therefore, this claim will be dismissed without prejudice subject to Plaintiff filing a Second Amended Complaint pursuant to the directives of the Court in the Order that follows this Memorandum Opinion.

    **b. <u>Property Restriction</u>**

Plaintiff alleges that had to go without numerous items for an unspecified period of time, such as a mattress, pillow, sheets, blanket, toilet paper, socks, boxers, t-shirts, and shoes. He also alleges that he was denied "basic cell content" and hygiene products, and claims that he was without running water for thirteen days. While he mentioned that CO Perez-Ramos was the officer who removed some of the items from his cell when he first arrived on F-B Pod, he does not identify who else was involved with the denial or restriction of such property at issue.

While putting an inmate on property restriction does not run afoul of the Eighth Amendment, courts have held that "the minimal civilized measure of life's necessities" includes provision for basic hygiene. *See, e.g.*, Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a refusal to provide toothpaste, leading to bleeding gums and tooth decay stated an Eighth Amendment claim); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992) (holding that requiring a prisoner to request permission to wash hands, receive toilet paper, or drink water stated an Eighth Amendment claim).

Once again, Plaintiff has not set forth sufficient facts to state an Eighth Amendment conditions of confinement claim with respect to the denial of water and certain property in connection with being on property restriction. Nevertheless, it is not certain that Plaintiff would not be able to state such a claim if he were given the chance to amend. Therefore, this claim too will be dismissed but without prejudice to Plaintiff filing a Second Amended Complaint pursuant to the directions of the Court.

### 3. Retaliation

It appears Plaintiff claims that most of the Defendants' mistreatment alleged in his Amended Complaint (denying grievances, ignoring request slips, denying meals, withholding property, etc.) was done in retaliation for the incident that occurred with CO Gill on November

10, 2016. It is well-established that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). In order to state a claim for retaliation, a plaintiff must sufficiently allege three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action" at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Id. at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 177)).

In this case, it is clear that whatever occurred between Plaintiff and CO Gill was not an exercise of a constitutional right and cannot support a claim for retaliation. Therefore, this claim will be dismissed with prejudice.

### 4. Harassment

Plaintiff accuses numerous Defendants of verbal harassment and intimidation throughout his Amended Complaint. These allegations, however, do not rise to the level of an Eighth Amendment violation. Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment. *See* McBride v. Deer, 240 F.3d 1287, 1291, n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). Therefore, Plaintiff's claim of harassment will be dismissed with prejudice.

### 5. Due Process

#### a. Failure to Respond to Grievances and Request Slips

Plaintiff alleges that certain Defendants failed to respond to request slips and he complains that every grievance he filed was denied. Even accepting these allegations as true, however, they do not state a constitutional claim because an official's role in responding to complaints and grievances is insufficient to establish personal involvement. Specifically, to

establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).  However, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish this personal involvement.  See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to later-filed grievances about his medical treatment, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Moreover, inmates have no constitutional right to a grievance system, and, therefore, their dissatisfaction with a response, or lack of a response, does not support a constitutional claim.  See Speight v. Sims, 283 F. App'x 880 (3d. Cir.2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."); Pryor-El v. Kelly, 892 F.Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  This claim will therefore be dismissed with prejudice.

### b. **Misconduct Hearing**

Plaintiff appears to assert a claim for a violation of due process in connection with the "illegal" misconduct hearing on November 15, 2016.  To assert a right to procedural due process,

a plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." Dunbar v. Barone, 487 F. App'x 721, 724 (3d Cir. 2012) (addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct hearing) (citing Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974)). "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Dunbar, 487 F. App'x at 724-25 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In this case, Plaintiff was found not guilty of the charges by Hearing Examiner Benner, and therefore he suffered no deprivation of a liberty interest which could conceivably trigger due process protections. Thus, this claim will be dismissed with prejudice.

### 6. Transfer

Plaintiff alleges that he was "illegally transferred" from SCI-Greene to SCI-Retreat on March 15, 2017, claiming that it was short-noticed, unexpected and done against DOC protocol. However, inmates have no constitutional right to placement in any particular institution. *See* Bush v. Rendell, 533 F. App'x 141, 144 (3d Cir. 2013) (citing Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983)). Furthermore, any violation of DOC policy or procedure does not amount to a federal constitutional violation. *See* Walker v. Zenk, 2007 WL 4895973, at *9 n.19 (M.D. Pa. Nov. 15, 2007), adopted in part and rejected in part, 2008 WL 351250 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, 2007 WL 2065879, at *7, n.11 (M.D. Pa. July 16, 2007) (holding that mere

failure of prison officials to follow their own regulations alone is not a constitutional violation). Therefore, this claim will be dismissed with prejudice.

### 7. Remaining Claims

Plaintiff appears to assert claims for oppression and conspiracy, as well as unspecified claims for violations of the Fourth, Fifth and Sixth Amendments. However, Plaintiff cannot bring a claim for official oppression, which is a violation of the Pennsylvania criminal code at 18 Pa. C.S.A. § 5301, because the statute does not provide for a private cause of action for citizens allegedly victim to the violating conduct. *See* Mathias v. Kershaw, 2010 WL 1329067, at *4 (M.D. Pa. Mar. 29, 2010). Also, Plaintiff has not stated a claim for conspiracy because there are no allegations in the Amended Complaint of a "combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Financial Planning Organization, Inc., 800 F.Supp. 1244, 1249 (E.D. Pa. Feb. 28, 1992) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)). Finally, there are no plausible claims for relief in the Amended Complaint under the Fourth, Fifth, or Sixth Amendments. As it is clear that allowing for amendment on any of these claims would be futile, they will be dismissed with prejudice.

A separate order will issue.

Dated: March 19, 2019.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| AARON VAUGHN, | ) | |
| --- | --- | --- |
| | ) | Civil Action No. 17 – 546 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CO GILL, *et al.*, | ) | ECF Nos. 63, 72 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

**AND NOW**, this 19th day of March, 2019, pursuant to the Memorandum Opinion issued contemporaneously herewith,

**IT IS HEREBY ORDERED** that the Defendants' Partial Motion to Dismiss (ECF No. 63) is granted as follows: (1) Plaintiff's conditions of confinement claims with respect to the denial of meals and property restriction are dismissed but without prejudice to Plaintiff filing a Second Amended Complaint; (2) Plaintiff's claims of harassment and due process violations in connection with the misconduct hearing held on November 15, 2016 and to the failure to respond to grievances and request slips are dismissed with prejudice as it is clear that allowing for amendment would be futile; and (3) Plaintiff's claim regarding an illegal transfer is dismissed with prejudice as allowing for amendment would also be futile.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Varner (ECF No. 72) is granted and the claims against her are dismissed with prejudice as they refer only to her involvement in the prison's grievance procedure.

**IT IS FURTHER ORDERED** that Plaintiff's retaliation claim, claims for official oppression and conspiracy, and claims for violations of the Fourth, Fifth and Sixth Amendments are dismissed with prejudice as allowing for amendment on these claims would be futile.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Second Amended Complaint within thirty (30) days of this Order. The Second Amended Complaint shall only include Plaintiff's claim involving excessive force, which was not dismissed, and claims regarding conditions of confinement, which were dismissed without prejudice to his right to amend. Plaintiff shall not include any claims in his Second Amended Complaint that have been dismissed with prejudice as a result of this Order. Additionally, the Second Amended Complaint must not refer back to any previous complaint that Plaintiff has filed as it will be a stand-alone document. Furthermore, Plaintiff should take care to include as Defendants only those individuals that were personally involved in the alleged constitutional violations as those Defendants without personal involvement will be dismissed.

**AND IT IS FURTHER ORDERED** that should Plaintiff fail to file a Second Amended Complaint that is compliant with this Order, the claims that were dismissed without prejudice in this Order will be dismissed with prejudice and this case will move forward only on Plaintiff's claim of excessive force against CO Gill and his co-worker as stated in his Amended Complaint.

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Aaron Vaughn
KW-3603

SCI Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA  16652

Counsel for Defendants
(*Via CM/ECF electronic mail*)